## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

Luke G. Sahs,

        Plaintiff,

v.

Loyola University New Orleans,

        Defendant.

_____/

Civil Action No.: 1:24-cv-20747

COMPLAINT FOR
(I)     DEFAMATION;
(II)    DEFAMATION PER SE;
(III)   DEFAMATION BY IMPLICATION;
(IV)   NEGLIGENCE;
(V)    NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;
(VI)   VICARIOUS LIABILITY;
(VII)  COMPENSATORY DAMAGES; AND
(VIII) PUNITIVE DAMAGES

DEMAND FOR JURY TRIAL

## COMPLAINT
## AND DEMAND FOR TRIAL BY JURY

Plaintiff Luke G. Sahs, through the undersigned attorneys and pursuant to the Federal Rules of Civil Procedure, bring this Complaint and Demand for Trial by Jury ("Complaint") against Defendant Loyola University New Orleans, and respectfully allege as follows:

## I.     NATURE OF ACTION

**1.** This action arises *inter alia* from tortious defamatory and libelous statements published on the Internet in Florida by Defendant Loyola University New Orleans, and which maliciously defamed, libeled, and impugned Plaintiff Luke G. Sahs' personal and professional character. The tortious defamatory and libelous statements were seen in the Miami area by numerous people on their Smart phones and computers.

## II.     THE PARTIES

2.      Plaintiff Luke G. Sahs ("Plaintiff Luke Sahs ") is a natural person who is of full age of majority and is a college student residing and domiciled in Miami, Florida, and will collectively be referred to hereafter as "Plaintiffs."

3.      Defendant Loyola University New Orleans ("Defendant Loyola University New Orleans") is a private, co-educational, Jesuit university organized and existing under the laws of the State of Louisiana with its principal place of business in New Orleans, Louisiana. Defendant Loyola University New Orleans's agent for receiving service of process is Ms. Sharonda Williams at 6363 St. Charles Avenue, CB 58, New Orleans, LA 70118.

4.      At all relevant times, The Maroon newspaper, which entity was and is the primary publisher of the invasion of privacy and defamatory statements sued upon herein, has been Defendant Loyola University New Orleans's student newspaper.

5.      At all relevant times, Defendant Loyola University New Orleans, acting directly and/or through its officers, employees, agents, and/or those over whom it exercised control including administrators, professors, and students, has been vested and imbued with authority for editorially controlling and/or approving the content of articles appearing in The Maroon and published on the Internet.

6.      At all relevant times, Defendant Loyola University New Orleans is a private institution which does not possess the same constitutional freedom of speech including First Amendment protections as vested with public universities.

### III.    JURISDICTION AND VENUE

7.      This Complaint has been filed as an original action in this District.

8.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) since the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States. *Mallory & Evans Contractors & Engineers, LLC v. Tuskegee University*, 663 F.3d 1304 (11th Cir. 2011).

9.      This Court has personal jurisdiction over Defendant Loyola University New Orleans by virtue of the Florida Long-Arm Statute. Fla. Stat. § 48.193(1)-(2) permits a court to exercise personal jurisdiction over a person who commits a tortious act within Florida. Pursuant to Fla. Stat. § 48.193(1)(a)(2), the Florida long-arm jurisdiction extends to defendants, such as Defendant Loyola University New Orleans, who commit tortious acts outside the state if their acts "cause injury in Florida." *Posner v. Essex Ins. Co., Ltd.,* 178 F.3d 1209, 1216 (11th Cir. 1999). A nonresident defendant, such as Defendant Loyola University New Orleans, commits the tortious act of defamation in Florida for purposes of Florida's long-arm statute when the nonresident makes defamatory statements regarding a Florida resident by posting those statements on a website, provided that the website posts containing the statements are accessible in Florida and were accessed in Florida. *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1216 (Fla. 2010); and *Internet Sols. Corp. v. Marshall*, 611 F.3d 1368, 1370 (11th Cir. 2010) (adopting standard set forth by the Florida Supreme Court).

10.     The tortious defamatory and libelous statements that impugned Plaintiff Luke Sahs' reputation and character have been assessed on the Internet by numerous people

and rapidly disseminated among the community in Miami-Dade County, Florida. This widespread dissemination included but was not limited to Sahs' school environment, affecting his peers, their parents, alumni, and the broader community; and thus, the tortious defamatory and libelous statements have been and continue to be published in Florida. As detailed herein, Defendant Loyola University New Orleans intentionally directed illegal acts towards the citizens and residents of individuals in the State of Florida and specifically targeted the populace within South Florida, with the effects being acutely felt within Miami-Dade County, as that is where Plaintiff are domiciliary located.

11.     This Court also has personal jurisdiction over Defendant Loyola University New Orleans because Defendant Loyola University New Orleans has the requisite minimum contacts with Florida necessary to constitutionally permit the Court to exercise jurisdiction over it consistent with traditional notions of fair play and substantial justice by *inter alia* continuously recruiting students from the State of Florida to attend Loyola University New Orleans, as well as committing torts using the Internet in the State of Florida and around the world. Defendant Loyola University New Orleans was and is aware that anything posted on the Internet would instantaneously be disseminated and promulgated to individuals located in the South Florida community including those around the globe.

12.     Additionally, the Defendant Loyola University New Orleans maintains and carries on systematic and continuous contacts in the Southern District of Florida, and regularly transacts business within this judicial district while regularly availing itself of the benefits in this Judicial District.

13.     The contacts and business that Defendant Loyola University New Orleans maintains and carries on in the Southern District of Florida in a systematic and continuous manner include at least by way of example and not by limitation:

a. Officers and administrators regularly visit and contact persons in the State of Florida for promoting Defendant Loyola University New Orleans. By way of example, on February 16, 2024, the President of Loyola, Xavier A. Cole, traveled to Miami, FL to attend a reception in his honor at the Wynwood Walls Goldman Gallery in the heart of Miami's Wynwood Arts District.

b. The Loyola University New Orleans Alumni Association regularly and systematically contacts (e.g., by e-mails) all Loyola Alumni in the Southern District of Florida, as well as elsewhere in Florida. The Loyola University New Orleans Alumni Association is a department that is part of Defendant Loyola University New Orleans.

c. The Office of Alumni Engagement, which is also part of Defendant Loyola University New Orleans and is located at 7214 St. Charles Avenue, New Orleans, LA, consistently, regularly contacts and entertains Loyola Miami alumni, along with prospective students that will be attending Defendant Loyola University New Orleans. By way of example, Plaintiff Luke Sahs was invited to attend the 2022 Miami Alumni Crawfish Boil held in Coral Gables, FL, on April 21, 2022, which was also attended by prospective students, their parents, and representatives from Loyola University New Orleans.

14.     Venue is proper in the Miami Division of the United States District for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part

of the events or omissions giving rise to the Actions in this Complaint occurred in Miami-Dade County, Florida, and Plaintiff resides in Miami-Dade County, Florida.

15.     Florida law governs the state law claims asserted herein by Plaintiff Luke Sahs against Defendant Loyola University New Orleans.

16.     Defendant Loyola University New Orleans's acts and omissions described herein occurred in the State of Florida where Plaintiff are located.

17.     Florida has a substantial interest in protecting the rights and interests of Florida residents against wrongdoing by individuals and companies that commit tortious acts within the State of Florida, which interest is greater than that of any other State or country.

18.     All conditions precedent to this action have occurred, have been performed, or have been waived, including meeting any applicable threshold jurisdictional amounts. Plaintiff have provided Defendant Loyola University New Orleans with the notice pursuant to Florida Statute 770.01.

### IV.     FACTUAL BACKGROUND RELEVANT TO ALL CAUSES OF ACTION

19.     Plaintiff Luke Sahs is a dedicated and accomplished young man who has demonstrated exceptional leadership, technical proficiency, environmental stewardship, and community service from his high school years through to his university studies.

20.     Plaintiff Luke Sahs graduated in 2022 from Ransom Everglades High School, located in Coconut Grove, Florida.

21.     While attending Ransom Everglades High School from Grades 9 through 12, Plaintiff Luke Sahs served as the Robotics Team Captain. Under his leadership and tutelage, the team qualified for state competitions in the years 2018 and 2019, and participated in over 50 tournaments.

22.     Plaintiff Luke Sahs is passionate regarding environmental conservation, which is demonstrated by his role as a volunteer diver with Royal Caribbean employees, where he dedicated considerable time to collecting debris and managing the removal of invasive species in the Fort Lauderdale reefs.

23.     Plaintiff Luke Sahs' commitment for environmental conservation has extended into marine science research where he has contributed valuable insights into marine organisms and ecosystems.

24.     Plaintiff Luke Sahs is a competitive gamer who led his Team Fortress 2 team to national recognition by emphasizing the importance of teamwork and strategic planning. His technological and creative skills were honed through designing games and IT shadowing experiences, all of which were preparing him for a future in innovative fields. He designed a popular game through Unreal Engine, the world's most open and advanced real-time 3D creation tool for photoreal visuals and immersive experiences.

25.     While attending Ransom Everglades High School, Plaintiff Luke Sahs was active in Troop 7 of Coral Gables of the Boys Scout of America, one of the oldest Boy Scout troops in the country and continually active in community service projects in South Florida.

26.     He was a member of the track team at Ransom Everglades High School, excelling as a 200-meter runner. He was also at the time engaging in public speaking and networking through Business Networking International ("BNI"), the world's largest business networking and business referral organization. As a regular guest during school vacations, he made weekly presentations to members of BNI to practice public speaking skills.

27.     In the latter part of 2021, Plaintiff Luke Sahs accepted a 4-year merit scholarship to attend Defendant Loyola University New Orleans to major in Environmental Science with a planned progression to a master's degree in marine biology.

28.     Plaintiff Luke Sahs' acceptance at Defendant Loyola University New Orleans with academic honors not only recognizes his past achievements but also anticipates his potential for significant contributions to his chosen field. His volunteer work in marine science research at Defendant Loyola University New Orleans underscores his ongoing commitment to environmental issues, which included focusing on the impact of invasive swamp eels on the New Orleans ecosystem. Swamp eels originated from the Indian subcontinent and are presently causing concern for the New Orleans ecosystem.

29.     At the start of his second semester at Loyola in January 2023, Professor Corroll Frank Jordan Jr. at Defendant Loyola University New Orleans invited his students to do a school-sponsored one-week trip to Roatan, Honduras to explore marine biology.

30.     Plaintiff Luke Sahs and a student from California, Morgan Ms. Matteson ("Ms. Matteson"), signed up for the trip, along with just two other students and two adult chaperones.

31.     During the Honduras trip in late February 2023, Plaintiff Luke Sahs and Ms. Matteson were assigned by Professor Corroll Frank Jordan Jr. to dive together, ostensibly because of the 4 students they were the only two certified open water divers and they would have left the resort earlier in the day for a different dive excursion than the other students and adults. Plaintiff Luke Sahs and Ms. Matteson had never spoken to each other before this Honduras trip. They had taken one class together in the first semester in 2022, and were in the same class at the start of the second semester in 2023.

32.     Students on the Honduras trip reported that Plaintiff Luke Sahs and Ms. Matteson were largely "inseparable" during the trip and appeared to have become friends.

33.     While on Defendant-sponsored and supervised dive trip in Honduras, Ms. Matteson told Plaintiff Luke Sahs that she had suffered with mental illness and depression.

34.     Ms. Matteson disclosed to Plaintiff Luke Sahs that prior to her admission to Loyola, she spent time at blueFire Wilderness.  blueFire Wilderness describes itself in the following manner:

> At blueFire Wilderness Therapy program, we are well aware that we serve the entire family system, not just the child who is acting out. We'll never tell you that we can "fix" your child's negative behaviors and return them to the very same home and school environment where the behavior started. Our multidisciplinary treatment team will work with you and your child to develop improved behavior and communication skills, as well as provide your family with a comprehensive and highly individualized treatment plan.

35.     Plaintiff Luke Sahs did not engage in a sexual relationship with Ms. Matteson during the Honduras trip or at any time.

36.     During her interview by the New Orleans Police Officers, which was videotaped, Ms. Matteson acknowledged that she did not have a sexual relationship with Plaintiff Luke Sahs.

37.     Plaintiff Luke Sahs believed that Ms. Matteson and he had become friends during the Honduras trip.

38.     In a conversation at the end of the trip, Plaintiff Luke Sahs informed Ms. Matteson that he was not interested in her other than as a friend.

39.     After returning from the Honduras trip and subsequent to Ms. Matteson being instructed by The Title IX office of Defendant Loyola University New Orleans to speak to the New Orleans Police Department ("NOPD"), Ms. Matteson and her mother went to the NOPD and told police at the NOPD the following false and slanderous accusations regarding Plaintiff Luke Sahs:

a.     Plaintiff Luke Sahs had told her that he was "relentlessly stalking her;"

b.     She was fearful for her life;

c.     He had bomb-making equipment in his possession and in his dormitory room;

d.     He had chemical burns on his body;

e.     He is a Nazi from Argentina with Nazi beliefs;

f.     He is a racist which everyone witnessed in Honduras;

g.     He is a psychopath; and

h.     He wrote about Ms. Matteson on social media.

40.     Ms. Matteson filed a misdemeanor stalking complaint with the NOPD against Plaintiff Luke Sahs for which Plaintiff Luke Sahs was to be arrested.

41.     NOPD sent four (4) New Orleans police officers to the campus of Defendant Loyola University New Orleans on March 2, 2023, to arrest Plaintiff Luke Sahs.

42.     The four (4) New Orleans police officers, accompanied by two (2) Loyola University Police Officers, went first to Plaintiff Luke Sahs' small dormitory room around 8:15 pm to arrest him. They were informed by Plaintiff Luke Sahs' small dormitory roommate, Mr. Brendan Bermejo, that Plaintiff Luke Sahs was not there as he had gone to the school cafeteria, Orleans Dining Room, to have dinner.

43.     Before leaving Plaintiff Luke Sahs' small dormitory room to go to the Orleans Dining Room to arrest Plaintiff Luke Sahs, the four (4) New Orleans police officers and the two (2) Loyola University Police Officers searched Plaintiff Luke Sahs' small dormitory room for chemical materials, firearms, and any other dangerous weapon. The four (4) New Orleans police officers and the two (2) Loyola University Police Officers found nothing in Plaintiff Luke Sahs' small dormitory room, no chemical materials, no firearms nor any other dangerous weapons or any weapons of any kind. They then left Plaintiff Luke Sahs' small dormitory room to go to the Orleans Dining Room to arrest Plaintiff Luke Sahs.

44.     Plaintiff Luke Sahs was arrested by the NOPD on March 2, 2023, at 8:50 pm in the middle of the Orleans Dining Room as he started to eat dinner. As he left the Orleans Dining Room in handcuffs, he was *immediately* photographed by Ms. Abigail Schmidt, a student photographer for The Maroon Loyola University newspaper, which then

possessed a picture ("Picture") of NOPD officers escorting Plaintiff Luke Sahs out of the Orleans Dining Room after being arrested pursuant to the misdemeanor stalking complaint which Ms. Matteson had filed with the NOPD. The photographer, Ms. Abigail Schmidt, was previously made aware of the impending arrest of Plaintiff Luke Sahs and was already in an opportune location to take the Picture of an arrested Plaintiff Luke Sahs **well before** the four (4) New Orleans police officers and the two (2) Loyola University Police Officers had arrived at the Orleans Dining Room to make the arrest. Thus, Defendant Loyola University New Orleans, acting directly and/or through its officers, employees, agents, and/or those over whom it exercised control including students, even knew that Plaintiff Luke Sahs was not in his small dormitory room, but had gone to the Orleans Dining Room to eat. The entire scenario had been prearranged and orchestrated. Ms. Matteson, a person with a self-declared history of mental illness and depression, was also one of Loyola students who also had participated, either directly or indirectly, in the prearranging of having Ms. Abigail Schmidt being immediately available in the opportune location in the Orleans Dining Room to take the Picture of the anticipated, impending arrest of Plaintiff Luke Sahs.

45. An official from the Loyola University Police Department ("LUPD"), either prior to or subsequent to Plaintiff Luke Sahs' arrests, spoke by telephone with an editor for The Maroon and suggested that the editor send a reporter to the LUPD station to obtain information regarding the arrest of Plaintiff Luke Sahs for the purpose of reporting and publishing an article in The Maroon.

46.     The Maroon sent a student journalist, Ms. Kloe Witt ("Ms. Witt"), to the LUPD station to obtain information regarding Plaintiff Luke Sahs' arrest, which related to the Ms. Matteson's misdemeanor stalking complaint filed with the NOPD, in order to report it in The Maroon the evening of March 2, 2023.

47.     Shortly after Ms. Witt arrived at the LUPD station, Ms. Marquita Morgan-Jones ("Ms. Morgan-Jones"), Assistant Director for Residential Community Standards for Defendant Loyola University New Orleans, also arrived at the LUPD station to inquire regarding Plaintiff Luke Sahs' arrest.

48.     A LUPD officer came into the lobby of the LUPD station and began briefing Ms. Witt and Ms. Morgan-Jones regarding the arrest of Plaintiff Luke Sahs. Ms. Witt started visibly recording the briefing by the LUPD officer on her Smartphone. During the briefing, Ms. Witt asked the LUPD officer if she could take a photo of the arrest documents ("Arrest Documents") pertaining to Plaintiff Luke Sahs. Instead, the LUPD officer made a copy of the Arrest Documents for her.

49.     When the officer handed Ms. Witt the Arrest Documents, Ms. Morgan-Jones confronted Ms. Witt and asked her who she was. Ms. Witt identified herself as a reporter from The Maroon. Ms. Morgan-Jones demanded and ordered Ms. Witt to hand over the Arrest Documents and leave immediately, which Ms. Witt did since she was only a student reporter and was not in any position to challenge Ms. Morgan-Jones, an Administrator and employee for Defendant Loyola University New Orleans.

50.     Ms. Witt left the LUPD station and then wrote a report for The Maroon regarding Plaintiff Luke Sahs' arrest, without the benefit and support of critical information

contained in the Arrest Documents that were abruptly confiscated from Ms. Witt by Ms. Morgan-Jones.

51.     On the evening of March 2, 2023, an article written by Ms. Witt was published by The Maroon on the Internet ("First Article"). The First Article is attached hereto as **Exhibit A**.

52.     The **Exhibit A** First Article included the Picture and the following defamatory, slanderous false accusatory statements:

53.      "Loyola police said Sahs was in possession of chemical materials that can be used to kill people."

54.     "LUPD said they believe he will be brought up on terroristic threat charges as well."

55.     "LUPD said Sahs made social media posts regarding the student who completed the report, spreading personal information regarding them such as the individual's nationality and family."

56.     The term "terrorist" exponentially amplifies the severity of the mendacious accusations against Plaintiff Luke Sahs and the subsequent negative impact of these false and defamatory statements. In the current socio-political environment, the term "terrorist" triggers strong reactions in the general public and authorities alike, often leading to swift, severe, and sometimes indiscriminate responses. The term "terrorist" also carries significant weight in digital domains like search engines and social media platforms, often triggering algorithms that prioritize and amplify content associated with such grave threats, leading to widespread dissemination and negative perception of Plaintiff Luke Sahs.

57.     The First Article and Picture (**Exhibit A**) went viral on the Internet and throughout the world. It was immediately disseminated and available on the Internet to all Loyola students at Defendant Loyola University New Orleans. The defamatory statements were also disseminated extensively within the South Miami community, where Plaintiff Luke Sahs has lived his entire life. The proliferation of these statements can be substantiated by a significant volume of social media shares and text messages, evidencing that a considerable number of individuals within the Miami area discussed the issue, often expressing alarm. The First Article and Picture (**Exhibit A**) were seen in the South Miami community, but also by at least Mr. Ernesto Cambo, Mr. Tommy Fisher, Plaintiff's friends, and their parents as well as by many other people. The First Article and Picture (**Exhibit A**) went viral to the extent of being published and seen in the Miami community on the social media platform of Ms. Athena Tsialas which has numerous followers. This defamatory and libelous article became widely circulated within the Miami community, particularly after Ms. Athena Tsialas, an individual with a significant following who attended the same high school as Plaintiff Luke Sahs, shared it on her social media platform.

58.     In addition, the New Orleans news outlet, NOLA.com, also published a story based on the First Article and Picture (**Exhibit A**), making it and the false and defamatory statements even more visible and profound nationwide.

59.     Plaintiff Luke Sahs spent the first night of March 2, 2023, in jail sleeping on a cold, damp concrete floor. He was arrested at 8:50 PM and it took hours for the NOPD

to book him. He had a difficult time sleeping because bright lights were incessantly shining in his face, and because the NOPD never turned off the lights in jail cells.

60.     The next night, of March 3, 2023, Plaintiff Luke Sahs slept on a thin, uncomfortable mattress in a jail cell where criminals charged with heinous crimes and with high bond surrounded him. Again, bright lights were incessantly shining in his face in the jail cell the entire night. Plaintiff Luke Sahs was also provided with a toothbrush, but no toothpaste for the toothbrush.

61.     When Plaintiff Luke Sahs returned to Miami on or about March 5, 2024, after being released on bond, his close friends who were back in Miami for spring break from college, either opted not to see him or were not allowed to see him by their parents due to the false and defamatory statements written in the First Article published by Defendant Loyola University New Orleans in The Marron, especially because of the published defamatory accusatory false words: "Loyola police said Sahs was in possession of chemical materials that can be used to kill people" and "LUPD said they believe he will be brought up on terroristic threat charges as well."

62.     Plaintiff Luke Sahs' friends in Miami were reluctant to socialize with a young man labelled as being associated with terrorism. Prior to the publication of the First Article, he had a large group of friends. Since the publication of the false and defamatory statements in the First Article, Plaintiff Luke Sahs experienced ostracization in Miami. His friends limited their interactions to texts or phone calls, avoiding in-person meetings despite his efforts to meet and clarify the inaccuracies of what was written in the First Article as published by The Maroon on March 2, 2023. Plaintiff Luke Sahs has and is

experiencing significant social and emotional trauma, as well as significant psychological stress.

63.     The repercussions of the viral defamation reached deep into Plaintiff Luke Sahs' social fabric. Long-standing friendships quickly disintegrated as peers succumbed to the spread of falsehoods, leaving Plaintiff Luke Sahs in a state of profound isolation and betrayal. This, isolation was palpably felt during moments of acute vulnerability, such as spring break and summer vacation, a time traditionally associated with camaraderie and relaxation, now a stark reminder of Plaintiff Luke Sahs' altered reality.

64.     On March 3, 2023, Plaintiff Luke Sahs received a letter from Defendant Loyola University New Orleans's Director of Student Conduct, Ms. Akilah Jones, which summarily suspended Plaintiff Luke Sahs from Defendant Loyola University New Orleans. ("Jones Letter") A copy of the Jones Letter is attached hereto as **Exhibit B**.

65.     The Jones Letter states in part:

Dear Luke Sahs,

According to student conduct records, you were documented for the following violation(s) of the Code of Conduct:

Weapons

Loyola University prohibits the possession of and/or use of firearms or other dangerous weapons; simulated or otherwise. Louisiana law and University policy prohibit:

A. The manufacture, ownership, possession or custody or use of any switchblade knife, spring knife, or other knife or similar instrument having a blade which may be automatically unfolded or extended from a handle by manipulation of a button, switch, latch, or similar contrivance.

B. Carrying a dangerous weapon to include any gas, liquid, or other substance or instrumentality that, in the manner used, is calculated or likely to produce death or great bodily harm.

C. The possession of firearms on-campus; simulated or otherwise.

D. The above prohibitions also apply to possession and storage of these items in a motor vehicle parked on Loyola's campus. Violation of the above policy and state law will subject the offender to University discipline up to and including dismissal from the University and/or prosecution under the state's criminal statutes depending on the nature and seriousness of the offense.

This charge stems from information the University received from a faculty member while on a study abroad trip to Roatan, Honduras. The faculty member reported that Luke made concerning statements stating that he wanted to "kill everyone in Buddig Hall" and "could easily make a chemical gas, put it in the air and kill everyone in their sleep." Luke continued by stating that he could do this in every residence hall, not just Buddig. On March 2, 2023, a warrant was issued for Mr. Sahs and he was arrested by the New Orleans Police Department.

Due to the serious nature of these allegations, you are being placed on interim suspension effective immediately (March 3, 2023). You will remain on interim suspension until the criminal investigation and university student conduct process are complete. During this time you are physically separated from the University: you may not attend classes or participate in campus activities. Should you need to return to campus, you are required to notify and receive permission to be on campus from University Police. University Police can be contacted at 504-865-3434.

66.    Plaintiff and their attorney, Elizabeth B. Carpenter Esq., engaged a Private Investigator to investigate and verify facts for this Action. The Private Investigator interviewed everyone (except Ms. Matteson and the wife of the professor) who had travelled to Roatan, Honduras along with Mr. Brendan Bermejo, the dorm roommate of Plaintiff Luke Sahs. All of them attested that they never saw Plaintiff Luke Sahs say

anything to give them the impression that he was a Nazi, or a racist, or that he was going to or threatening to blow up anything, or that he was a stalker.

67.     On Thursday, March 30, 2023, at 3:30 pm, the Private Investigator met with Professor Corroll Frank Jordan Jr. ("Professor Jordan") regarding the Roatan, Honduras trip he took with students, two of the students being Plaintiff Luke Sahs and Ms. Matteson. The interview was conducted in person on the campus of Defendant Loyola University New Orleans and was recorded.

68.     During the interview Professor Jordan stated:

a.     He never noticed any type of stalking behavior towards Morgan Ms. Matteson from Luke Sahs in his lab;

b.     Ms. Matteson and Plaintiff Luke Sahs were partnered together by the faculty advisor for all of the activities during the Honduras trip;

c.     He never heard threats from Luke Sahs towards Morgan Ms. Matteson before the trip or while they were on the Honduras trip;

d.     He never heard Luke Sahs threaten Loyola University;

e.     He never heard Luke Sahs make any statements identifying himself with being a Nazi or a Supremacist; and

f.     He was surprised by the arrest of Plaintiff Luke Sahs, and he thought the situation would have been managed differently.

69.     On Saturday, April 22, 2023, at 3:30 pm, the Private Investigator had a telephone interview with Mr. Brendan Bermejo, the dorm roommate of Plaintiff Luke Sahs. The telephone interview was recorded.

70.     During the interview Mr. Brendan Bermejo stated:

a.     He knew Luke Sahs went on a trip to Honduras, and when Luke returned the only complaint he mentioned was how many bug bites he had experienced from the trip;

b.     He did not know anyone who attended the trip other than Luke;

c.     He never heard Luke speak of Ms. Matteson;

d.     Ms. Matteson never came up in any conversation he has ever had with Luke;

e.     He never heard Luke speak of threatening the school or anyone at the school or anyone for that matter;

f.     He never heard Luke speak of any racist beliefs of any kind;

g.     He never heard Luke say anything racist towards any culture, race, religion, ethnic group, or nationality, and Luke has never portrayed anything remotely with that kind of behavior;

h.     He did not believe Luke could be racist, and because of the amount of time they have spent together he would have noticed this before;

i.     He and Luke have spent a great deal of their time together and he did not think it would be feasible for Luke to have stalked anyone;

j.     It would be far-fetched to believe that Luke had stalked anyone;

k.      It would have been impossible for Luke to create or have any type of bomb-making materials in the dorm room without him knowing the materials were in the room;

l.      He never saw any materials remotely like this in the dorm room at any time;

m.      Nothing was taken into evidence from the dorm room when the NOPD searched the dorm room;

n.      He has never seen any chemical burns on Luke's body;

o.      The March 2, 2023, news article in The Maroon regarding Luke was not factually correct;

p.      He never spoke to Kloe Witt [the student journalist] in his life before the March 2, 2023, news article in The Maroon was published;

q.      Kloe Witt sent him an email after the March 2, 2023, news article in The Maroon was published;

r.      The email from Kloe Witt asked him to retroactively confirm the events that she had already published in the March 2, 2023, news article in The Maroon;

s.      Luke was a good student and Mr. Bermejo was surprised that he was arrested; and

t.      He thinks the claims made by student Ms. Matteson were unfounded and not true, and that Luke deserves to be immediately reinstated back at Loyola University.

71.     On March 3, 2023, the very next day after the March 2, 2023, First Article and Picture appeared and published in The Maroon, Defendant Loyola University New Orleans suspended Plaintiff Luke Sahs for "the possession of and/or use of firearms or other dangerous weapons" and based on information Defendant Loyola University New Orleans received from Professor Jordan. (see **Exhibit B** Jones Letter)

72.     Plaintiff Luke Sahs never told anyone he wanted to "kill everyone in Buddig Hall" and "could easily make a chemical gas, put it in the air and kill everyone in their sleep," and could [or would] do this in every residence hall on the campus of Defendant Loyola University New Orleans, not just Buddig.

73.     Had Defendant Loyola University New Orleans properly investigated this matter, it would have discovered that the March 2, 2023, warrant for Plaintiff Luke Sahs arrest by NOPD related to the alleged stalking of Ms. Matteson by Plaintiff Luke Sahs, and had nothing to do with "the possession of and/or use of firearms or other dangerous weapons."

74.     Had Defendant Loyola University New Orleans properly investigated this matter, it would have been able to make informed credible decisions based on Ms. Matteson's record for lack of credibility and self-proclaimed history of mental illness compared to Plaintiff Luke Sahs' pristine record, and would have prevented the harm that Defendant Loyola University New Orleans's actions and omissions caused Plaintiff Luke Sahs.

75.     Defendant Loyola University New Orleans suspended Plaintiff Luke Sahs based on uncorroborated accusations done in absence of any tangible evidence, such as any

"possession of chemical materials that can be used to kill people" or "the possession of and/or use of firearms or other dangerous weapons" including bomb-making equipment, all which would have been found by the four (4) New Orleans policemen and the two (2) Loyola University policemen in Plaintiff Luke Sahs' small dorm room on March 2, 2023. This immediate punitive action against Plaintiff Luke Sahs was taken without investigation or due process.

76.     On March 10, 2023, Plaintiff Luke Sahs' attorney, Elizabeth Bagert Carpenter Esq., sent a letter to the President of Loyola, Rev. Justin Daffron, S.J., by e-mail, with a copy to Jackie Galli, one of the Editors-in-Chief at The Maroon ("Carpenter Letter"). A copy of the Carpenter Letter is attached hereto as **Exhibit C**.

77.     The **Exhibit C** Carpenter Letter identifies false statements in the First Article:

> Dear President Daffron,
>
> The article published by the Maroon contains untruthful, malicious statements that are causing irreparable harm to Mr. Sahs' reputation, emotional wellbeing, and academic pursuits.
>
> Specifically, the article says in pertinent part:
>
>> Loyola police said Sahs was in possession of chemical materials that can be used to kill people. LUPD said they believe he will be brought up on terroristic threat charges as well. LUPD said Sahs made social media posts about the student who completed the report, spreading personal information about them such as the individual's nationality and family**.**
>
> I hereby demand that everyone associated with your institution immediately cease and desist from publishing or asserting any further false or misleading information about Mr. Sahs. Furthermore, I demand that the Loyola Maroon remove the

defamatory article from the internet and all channels within 1 day of receipt of this notice.

The gravity of this situation cannot be understated. We are deeply concerned about the immense harm caused to Mr. Sahs and his reputation. It is clear that Loyola and all those involved have acted with willful, wanton, and reckless disregard for the truth. If you do not take immediate action to remediate the situation, we will pursue all available legal remedies to compensate Mr. Sahs for the damages that he has sustained. Let it be known to everyone involved in this horrific injustice that we are fully prepared to defend Mr. Sahs and clear his name.

78.     On or about March 17, 2023, Ms. Witt rewrote and modified the **Exhibit A** First Article and Picture, producing a Second Article and Picture which is attached hereto as **Exhibit D**. The First Article and Picture (**Exhibit A**) on the Internet were replaced by Defendant Loyola University New Orleans with the Second Article and Picture (**Exhibit D**). Instead of Defendant Loyola University New Orleans and Ms. Witt assigning the **_true date_** as to when the **Exhibit D** Second Article was written and published on the Internet, they deceptively, fraudulently back dated the date which the Second Article was written to the date of March 2, 2023, the same date as when the First Article was written and published on the Internet along with the Picture. They never acknowledge their mistake, hoping to lure the public into a belief that the very First Article with its defamatory statements never existed.

79.     The **Exhibit D** Second Article underneath the Picture, has the following defamatory, slanderous, and libelous false accusatory statement:

"The affidavit claimed Sahs was in possession of chemical materials that can be used to kill people."

80.     On March 13, 2023, at 9:36 am Ms. Sharonda R. Williams, General Counsel

and Director of Government Affairs for Defendant Loyola University New Orleans, sent a

letter by an e-mail to Elizabeth Bagert Carpenter Esq., with a copy to aajones, Ms. Akilah

Jones. ("Williams Letter") A copy of the Williams Letter is attached hereto as **Exhibit E**.

81.     The **Exhibit E** Williams Letter states in part:

> I am writing in response to your March 10 email to Pres. Daffron.
> Without waiving any arguments on behalf of Loyola, the Maroon
> removed the article from its online content on Friday, March 10.
> Loyola takes issues of student privacy seriously, and we have
> removed the article out of an abundance of caution and to allow us
> to fully investigate the statements set forth in your March 10 email.

82.     On March 13, 2023, Elizabeth Bagert Carpenter Esq., as a response to the

**Exhibit E** Williams Letter, sent a letter to Ms. Sharonda R. Williams by e-mail, with a

copy to aajones, Ms. Akilah Jones. ("Carpenter March 13 Letter") A copy of the Carpenter

March 13 Letter is attached hereto as **Exhibit F**.

83.     The **Exhibit F** Carpenter March 13, 2023, Letter identifies false statements

published by Defendant:

> Thank you very much for your swift action.
>
> I have 2 other issues that I would like to mention regarding these false
> reports.
>
> 1. Please ask your IT department to clear the cache of this
>    article because it is still appearing on other areas of the
>    Loy[ola] web site.
> 2. The office of student conduct issued an interim suspension
>    for Mr. Sahs based on this false report. More specifically, the
>    office has claimed that Mr. Sahs was in possession of bomb
>    making chemicals, firearms, knives, and threatened to kill
>    everyone i[n] the dorm.

This disciplinary action was allegedly based on reports from a faculty member.

This is untruthful and baseless. Not to mention, the office of student conduct has acted in a harmful and reckless manner.

Mr. Sahs was never found in possession of any such items. He also never made any statements to a faculty member or anyone for that matter about bombs or weapons.

As I mentioned, a young lady with questionable credibility and a dishonest police officer made these statements.

84.     Elizabeth Bagert Carpenter, Esq. *again* admonished Defendant Loyola University New Orleans that the following statements in the First Article were not truthful, specifically:

Loyola police said Sahs was in possession of chemical materials that can be used to kill people. LUPD said they believe he will be brought up on terroristic threat charges as well. LUPD said Sahs made social media posts about the student who completed the report, spreading personal information about them such as the individual's nationality and family.

85.     Elizabeth Bagert Carpenter, Esq. *again* admonished Defendant Loyola University New Orleans that the Office of Student Conduct, headed and supervised by Ms. Akilah Jones, acted in **a harmful and reckless manner** by suspending Plaintiff Luke Sahs.

86.     After investigating the defamatory statements in the **Exhibit A** First Article, on or about March 17, 2023, Defendant Loyola University New Orleans, through the actions of Ms. Witt, replaced the First Article and Picture (**Exhibit A**) on the Internet with the Second Article and Picture (**Exhibit D**) which did not include the defamatory words "LUPD said they believe he will be brought up on terroristic threat charges as well" and "LUPD said Sahs made social media posts regarding the student who completed the

report, spreading personal information regarding them such as the individual's nationality and family." However, the Second Article and Picture (**Exhibit D**) included the slanderous and libelous false accusatory statement "[t]he affidavit claimed Sahs was in possession of chemical materials that can be used to kill people" which was a *rephrase* of the defamatory statement "[l]oyola police said Sahs was in possession of chemical materials that can be used to kill people" from the First Article and Picture (**Exhibit A**).

87.     Defendant Loyola University New Orleans's removal of the defamatory words "LUPD said they believe he will be brought up on terroristic threat charges as well" and "LUPD said Sahs made social media posts regarding the student who completed the report, spreading personal information regarding them such as the individual's nationality and family" from the First Article and Picture (**Exhibit A**) was tantamount to an admission by Defendant Loyola University New Orleans that these statements were not truthful.

88.     On January 22, 2024, the criminal case against Plaintiff Luke Sahs was set for trial. In the morning of January 22, 2024, the New Orleans District of Attorney dismissed the criminal case against Plaintiff Luke Sahs for lack of evidence.

### V.     CAUSES OF ACTION
### COUNT I
### DEFAMATION

89.     Plaintiff reallege and incorporate each and every allegation contained in each and every preceding Paragraphs 1 through 88 as if fully set forth herein and further allege:

90.     This cause of action for defamation arises from Defendant Loyola University New Orleans, acting directly and/or through its officers, administrators,

employees, agents, and/or those over whom it exercised control: (1) writing and/or reporting false statements, which included defamatory words regarding Plaintiff Luke Sahs, with reckless disregard and/or at least negligence; and (2) publishing publicly the false statements and defamatory words online on the Internet, so people in South Florida and around the world could read and did actually read, all of which caused actual damages to Plaintiffs. (*see Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098 (Fla. 2008))

91.     The false statements published by Defendant Loyola University New Orleans, acting directly and/or through its officers, administrators, employees, agents, and/or those over whom it exercised control, were objectively harmful and untrue, and were made and written without caring if the statements were true, all causing actual harm and substantial damages to Plaintiff Luke Sahs' reputation, personal and/or professional life.

92.     The statements pertaining to Plaintiff Luke Sahs published on the Internet by Defendant Loyola University New Orleans, acting directly and/or through its officers, administrators, employees, agents, and/or those over whom it exercised control, were and are defamatory because inter alia the statements harmed the reputation of Plaintiff Luke Sahs to such an extent as to lower him in judgment or estimation of the community, as well as deterring third persons from associating or dealing with him. *See Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So.2d 841, 845 (Fla. 4th DCA 2002).

93.     The defamatory statements pertaining to Plaintiff Luke Sahs were published on the Internet by Defendant Loyola University New Orleans, acting directly and/or

through its officers, administrators, employees, agents, and/or those over whom it exercised control,

94.     Defendant Loyola University New Orleans, acting directly and/or through its officers, administrators, employees, agents, and/or those over whom it exercised control, took a picture (i.e., Picture) of Plaintiff Luke Sahs immediately after being handcuffed and arrested, and then published the Picture on March 2, 2023, in the Maroon on the Internet along with The First Article having the following defamatory and false accusatory statements pertaining to Plaintiff Luke Sahs:

> a. "Loyola police said Sahs was in possession of chemical materials that can be used to kill people."

> b. "LUPD said they believe he will be brought up on terroristic threat charges as well."

> c. "LUPD said Sahs made social media posts about the student who completed the report, spreading personal information about them such as the individual's nationality and family."

95.     Defendant Loyola University New Orleans summarily dismissed Plaintiff Luke Sahs from Loyola University New Orleans on March 3, 2023, as evidenced by the **Exhibit B** Jones Letter.

96.     On or about March 10, 2023, the undersigned attorney Elizabeth Bagert Carpenter Esq, sent the President of Defendant Loyola University New Orleans a cease-and-desist letter by e-mail (see **Exhibit C** Carpenter Letter), demanding that Defendant Loyola University New Orleans immediately remove from publication on the Internet the following defamatory statements pertaining to Plaintiff Luke Sahs:

> Loyola police said Sahs was in possession of chemical materials that can be used to kill people. LUPD said they believe he will be brought up on terroristic threat charges as well. LUPD said Sahs made social media posts about the student who completed the report, spreading personal information about them such as the individual's nationality and family.

97.     On or about March 17, 2023, Defendant Loyola University New Orleans, acting directly and/or through Ms. Witt and others whom it exercised control, wrote the **Exhibit D** Second Article which replaced the following defamatory words from the **Exhibit A** First Article:

> Loyola police said Sahs was in possession of chemical materials that can be used to kill people. LUPD said they believe he will be brought up on terroristic threat charges as well. LUPD said Sahs made social media posts about the student who completed the report, spreading personal information about them such as the individual's nationality and family.

with the false defamatory, slanderous, and libelous accusatory statement in the **Exhibit D** Second Article:

> "The affidavit claimed Sahs was in possession of chemical materials that can be used to kill people."

98.     Defendant Loyola University New Orleans, acting directly and/or through Ms. Witt and others whom it exercised control, replaced the **Exhibit A** First Article on the Internet with the **Exhibit D** Second Article after *deceptively back dating* the date with which the **Exhibit D** Second Article was written to the date of March 2, 2023, the *same date* as when the First Article was written and published on the Internet along with the Picture.

99.     Defendant Loyola University New Orleans never acknowledged its mistake

of publishing in the March 2, 2023, First Article the false defamatory statements:

> Loyola police said Sahs was in possession of chemical materials that
> can be used to kill people. LUPD said they believe he will be
> brought up on terroristic threat charges as well. LUPD said Sahs
> made social media posts about the student who completed the report,
> spreading personal information about them such as the individual's
> nationality and family.

100.    This republished same Picture of Plaintiff Luke Sahs that was displayed in

The Maroon on the Internet on March 2, 2023, along with the false defamatory statement

in the **Exhibit D** Second Article, still remain as of February 12, 2024 on the Internet at:

https://loyolamaroon.com/10037952/news/loyola-student-arrested-in-dining-hall/.

101.    At all relevant times, the First Article and the Second Article were published

on the Internet by Defendant Loyola University New Orleans, acting directly and/or

through its officers, administrators, employees, agents and/or those over whom it exercised

control, and comprised words and statements regarding Plaintiff Luke Sahs which were

disparaging, libelous and defamatory.

102.    The actions and omissions of Defendant Loyola University New Orleans,

acting directly and/or through its officers, employees, agents, and/or those over whom it

exercised control, as described above including in this Count I were libelous and

defamatory.

103.    As a direct and proximate result of Defendant Loyola University New

Orleans's acts and omissions, acting directly and/or through its officers, administrators,

employees, agents and/or those over whom it exercised control, as described above

including in this Count I, Plaintiff have suffered and continue to suffer damages, as well as the irreparable harm to Plaintiffs' personal and professional reputation with those in the community. The damages are permanent and continuing in nature.

104.     As a direct and proximate result of the Defendant Loyola University New Orleans's acts and omissions, acting directly and/or through its officers, administrators, employees, agents and/or those over whom it exercised control, as described above including in this Count I, Plaintiff also sustained personal and professional humiliation, mental anguish and suffering experienced in the past and/or to be experienced in the future.

**COUNT II**
**DEFAMATION PER SE**

105.     Plaintiff reallege and incorporate the allegations contained in Paragraphs 1 through 88 above as if fully set forth herein, and further allege the following:

106.     Plaintiff bring this Count II against Defendant Loyola University New Orleans for Defamation *per se*, as an alternative to Count I for defamation.

107.      The defamatory words contained in the First Article and in the Second Article, which Defendant Loyola University New Orleans, acting directly and/or through its officers, administrators, employees, agents, and/or those over whom it exercised control, published on the Internet were defamatory *per se* since the words expressly or implicitly accused Plaintiff Luke Sahs of a crime or criminal conduct, or which by their very nature tended to injure Plaintiff Luke Sahs' personal or professional reputation as a student.

108.     The defamatory words in the First Article and in the Second Article constitute defamation per se because they impute conduct to Plaintiff Luke Sahs that is incompatible with the proper exercise of his lawful profession as a student.

109.    Florida has criminal statutes that makes it a felony for terrorism or terroristic threats and for a person to possess chemical materials, such as explosives, which can be used to kill people. By way of example, see Florida Statute 552 et seq. for the crimes of manufacturing, distributing, and using dangerous chemicals for explosives and Florida Statute 876.34 pertaining to terrorism.

110.    Defendant Loyola University New Orleans, acting directly and/or through its officers, administrators, employees, agents, and/or those over whom it exercised control, took a picture of Plaintiff Luke Sahs immediately after being handcuffed and arrested, and then published the picture along with the **Exhibit A** First Article on March 2, 2023, in the Maroon on the Internet along with the defamatory *per se* statements:

> "Loyola police said Sahs was in possession of chemical materials that can be used to kill people. LUPD [Loyola University Police Department] said they believe he will be brought up on terroristic threat charges as well."

111.    On March 2, 2023, Defendant Loyola University New Orleans, acting directly and/or through Ms. Witt and others whom it exercised control, published on the Internet the **Exhibit D** Second Article containing the defamatory *per se* statement:

> "The affidavit claimed Sahs was in possession of chemical materials that can be used to kill people."

112.    At all relevant times, Defendant Loyola University New Orleans, acting directly and/or through its officers, administrators, employees, agents, and/or those over whom it exercised control, did knowingly and intentionally:

    a.      publish on the Internet words which were defamatory *per se* since the words expressly or implicitly accused Plaintiff Luke Sahs of the crime or criminal

conduct of possessing chemical materials that can be used to kill people, and which could be used in acts of terrorism;

b.      publish on the Internet words which were defamatory *per se* since the words implicitly accused Plaintiff Luke Sahs of the crime or criminal conduct of having made terroristic threats;

c.      publish on the Internet words which were defamatory *per se* since the published defamatory words on the Internet expressly or implicitly imputed to Plaintiff Luke Sahs conduct having characteristics or a condition incompatible with the proper exercise of Plaintiff Luke Sahs' profession of being a college student in good standing;

d.      publish on the Internet words which were defamatory *per se* with the intended purpose of subjecting the Plaintiff Luke Sahs to distrust, contempt or disgrace from his existing friends and college colleagues, as well as prospective friends and college colleagues; and/or

e.      publish on the Internet words which were defamatory *per se* regarding Plaintiff Luke Sahs with the intended purpose of injuring Plaintiff Luke Sahs' personal and professional reputation, including, but not limited to, impugning his profession as a college student and an aspiring marine biologist.

113.    The actions and omissions of Defendant Loyola University New Orleans, acting directly and/or through its officers, employees, agents, and/or those over whom it exercised control, as described above including in this Count II, were libelous and defamatory *per se*.

114.    As a direct and proximate result of the actions and omissions of Defendant Loyola University New Orleans, acting directly and/or through its officers, administrators, employees, agents, and/or those over whom it exercised control, as described above including in this Count II, Plaintiff have suffered and will continue to suffer damages, as well as irreparable harm to Plaintiffs' personal and professional reputation with those in the community. The damages are permanent and continuing in nature.

115.    As a direct and proximate result of the actions and omissions of Defendant Loyola University New Orleans, acting directly and/or through its officers, administrators, employees, agents, and/or those over whom it exercised control, as described above including in this Count II, Plaintiff also sustained personal and professional humiliation, mental anguish and suffering experienced in the past and/or to be experienced in the future.

## COUNT III
## DEFAMATION BY IMPLICATION

116.    Plaintiff reallege and incorporate each and every allegation contained in each and every preceding Paragraphs 1 through 88 as if fully set forth herein, and further alleges:

117.    This cause of action for defamation by implication arises from Defendant Loyola University New Orleans, acting directly and/or through its officers, administrators, employees, agents, and/or those over whom it exercised control, defames the character and reputation of Plaintiff Luke Sahs from what is implied when Defendant Loyola University New Orleans: (1) juxtaposes a series of facts so as to imply a defamatory connection between them; **or** (2) creates a defamatory implication by omitting facts.  (See *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla.2008)).

118.     Defamation by implication is "premised not on direct statements but on false suggestions, impressions and implications arising from otherwise truthful statements." (*Jews for Jesus*, 997 So. 2d at 1107)

119.     A true statement can be defamatory under Florida law where, by its context or the omission of other facts, it creates a false impression and satisfies all of the other elements of defamation. (*Jews for Jesus*, 997 So. 2d at 1108)

120.     The statement in the March 2, 2023, **Exhibit A** First Article "Loyola police said Sahs was in possession of chemical materials that can be used to kill people" improperly suggests, implies or connotes that college student Plaintiff Luke Sahs had either; (1) the chemical materials used to kill people *in his personal possession* at the time of his arrest in the Orleans Dining Room of Defendant Loyola University New Orleans; or (2) the chemical materials used to kill people were located and stored in Plaintiff Luke Sahs' small dormitory room, which would further improperly suggests or imply that such chemical materials had been previously purchased by Plaintiff Luke Sahs from an outside source, or Plaintiff Luke Sahs was in the business of manufacturing the chemical materials in his small dormitory room.

121.     Plaintiff Luke Sahs had no chemical materials in his personal possession at the time of his arrest in the Orleans Room of Defendant Loyola University New Orleans; nor did he have any chemical materials in his small dormitory room as the four (4) New Orleans policemen and the two (2) Loyola University Police Officers discovered after searching Plaintiff Luke Sahs' small dormitory room in the evening of March 2, 2023.

122.     The statement in the March 2, 2023, **Exhibit A** First Article "LUPD said they believe he will be brought up on terroristic threat charges as well" improperly suggests, implies, or connotes that college student Plaintiff Luke Sahs had previously made terroristic threats when in fact he never did.

123.     The statement "LUPD said they believe he will be brought up on terroristic threat charges as well" does not qualify as an opinion because whether Plaintiff Luke Sahs previously committed a terroristic threat warranting a terroristic threat charge could be proven true or false through discovery and evidence.

124.     The statement in the March 2, 2023, **Exhibit A** First Article "LUPD said they believe he will be brought up on terroristic threat charges as well" is considered defamatory by implication by omitting facts because the reader of the statement could reasonably infer that the "alleged belief" was based on an undisclosed fact, the undisclosed fact that Plaintiff Luke Sahs did indeed make previous terroristic threats when in fact he never did.

125.     The statements in the March 2, 2023, **Exhibit A** First Article "Loyola police said Sahs was in possession of chemical materials that can be used to kill people" in conjunction with the immediate-following statement "LUPD said they believe he will be brought up on terroristic threat charges as well" improperly suggests, implies or connotes that Plaintiff Luke Sahs has previously threatened to use the chemical materials that can be used to kill people to commit terrorism, all of which would defame Plaintiff Luke Sahs by implication.

126.    The statement in the March 2, 2023, **Exhibit D** Second Article "The affidavit claimed Sahs was in possession of chemical materials that can be used to kill people" (even if true, which it was not) improperly suggests, implies or connotes, as stated for the statement "Loyola police said Sahs was in possession of chemical materials that can be used to kill people" in the **Exhibit A** First Article, that college student Plaintiff Luke Sahs had either; (1) the chemical materials used to kill people *in his personal possession* at the time of his arrest in the Orleans Dining Room of Defendant Loyola University New Orleans; or (2) the chemical materials used to kill people were located and stored in Plaintiff Luke Sahs' small dormitory room, which would further improperly suggests or imply that such chemical materials had been previously purchased by Plaintiff Luke Sahs from an outside source, or Plaintiff Luke Sahs was in the business of manufacturing the chemical materials in his small dormitory room. Plaintiff Luke Sahs had no chemical materials *in his personal possession* at the time of his arrest in the Orleans Dining Room of Defendant Loyola University New Orleans, nor did he have any chemical materials in his small dormitory room as the four (4) New Orleans policemen and the two (2) Loyola University Police Officers discovered after searching Plaintiff Luke Sahs' small dormitory room in the evening of March 2, 2023.

**COUNT IV**
**NEGLIGENCE**

127.    Plaintiff reallege and incorporate each and every allegation contained in each and every preceding Paragraphs 1 through 88 as if fully set forth herein, and further allege:

128.   This cause of action for negligence arises from Defendant Loyola University New Orleans, acting directly and/or through its officers, administrators, employees, agents, and/or those over whom it exercised control, failure to behave with the level of care that an ordinary prudent person would have exercised under the same circumstances.

129.   At all relevant times, Defendant Loyola University New Orleans, acting directly and/or through its officers, administrators, employees, agents, and/or those over whom it exercised control, had a duty to exercise reasonable care including conforming to a certain standard of conduct for the protection of others.

130.   Defendant Loyola University New Orleans, acting directly and/or through its officers, administrators, employees, agents, and/or those over whom it exercised control, violated *inter alia* the following rules for protection of the community as set forth in the *Radio Television Digital News Association's Code of Ethics* (2015) and of the *Society of Professional Journalists' Code of Ethics 2014*:

a) information must be verified before publication;

b) the absence of information in the publication must be acknowledged;

c) conflicts of interest must be disclosed;

d) sources must be clearly identified and described so the public has sufficient information regarding sources to be able to judge the reliability and motivations of those sources; and

e) mistakes must be acknowledged and corrected.

131.    Defendant Loyola University New Orleans, acting directly and/or through its officers, administrators, employees, agents, and/or those over whom it exercised control, breached its duty of care and acted negligently by, among other things:

a. devising, publishing, and disseminating on the Internet defamatory language and words which disparaged and defamed Plaintiff Luke Sahs' personal and professional character as a student;

b. failing to ascertain that the published statements regarding Plaintiff Luke Sahs were false and defamatory;

c. failing to exercise reasonable care towards Plaintiff Luke Sahs;

d. suspending Plaintiff Luke Sahs from Defendant Loyola University New Orleans based on *inter alia* unfounded, false reasons and pretenses;

e. possessing inadequate or insufficient policies pertaining to preventing the type of actions and omissions made subject of this Complaint;

f. failing to properly supervise its officers, administrators, employees, agents, and/or those over whom it exercised control including student journalists;

g. failing to properly train and/or instruct its officers, administrators, employees, agents, and/or those over whom it exercised control including student journalists;

h. acting in violation of the laws of the State of Florida, all of which acts will be properly proven at the trial of this matter;

i. mishandling confidential information by *inter alia* enabling the Loyola University Police Department (LUPD) to share details of Plaintiff Luke Sahs' arrest warrant

with The Maroon newspaper, contributing to the false, defamatory narrative that resulted in the defamatory articles in The Maroon; and

j. in addition to any and all other acts of negligence and to exercise the degree of care required under the circumstances, all without any negligence of Plaintiff Luke Sahs contributing thereto, all of which are in violation of the dictates of common sense, and the applicable ordinances and laws of the State of Florida, which are all specifically plead and incorporated herein.

132.   Defendant Loyola University New Orleans, acting directly and/or through its officers, administrators, employees, agents, and/or those over whom it exercised control, breached its duty of care which caused Plaintiff Luke Sahs to suffer injuries.

133.   Plaintiff Luke Sahs suffered actual damages or losses resulting from such injuries.

134.   The aforesaid incidents as detailed herein, and the resulting injuries and damages specified herein, were proximately and legally caused by the fault, negligence and/or gross negligence of Defendant Loyola University New Orleans, acting directly and/or through its agents, administrators, employees, servants, and/or those over whom it exercised control, all of which violated of the laws of the State of Florida as will be shown during the trial hereof.

135.   As a direct and proximate result of the negligent acts and omissions of Defendant Loyola University New Orleans, acting directly and/or through its officers, administrators, employees, agents, and/or those over whom it exercised control, as described above including in this Count IV, Plaintiff Luke Sahs has suffered and will

continue to suffer damages, as well as irreparable harm to Plaintiff Luke Sahs' personal and professional reputation with *inter alia* his current friends and college colleagues. The losses are permanent or continuing in nature, and Plaintiff Luke Sahs will suffer the losses in the future.

**COUNT V**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

136.    Plaintiff reallege and incorporate each and every allegation contained in each and every preceding Paragraphs 1 through 88 and Paragraphs 128 through 135 as if fully set forth herein, and further allege:

137.    This cause of action for negligent infliction of emotional distress arises from *inter alia* Defendant Loyola University New Orleans's negligence and other acts and/or omissions as detailed herein.

138.    Defendant Loyola University New Orleans, acting directly and/or through its officers, administrators, employees, agents, and/or those over whom it exercised control, negligently and/or gross negligently acted in a manner to cause Plaintiff emotional distress and harm.

139.    Defendant Loyola University New Orleans, acting directly and/or through its officers, administrators, employees, agents, and/or those over whom it exercised control, knew or reasonably should have known that its actions and omissions would cause Plaintiff emotional distress and harm.

140.    As a direct and proximate result of the negligent acts and omissions of Defendant Loyola University New Orleans, acting directly and/or through its officers, administrators, employees, agents, and/or those over whom it exercised control as

previously described above, Plaintiff were damaged and injured, and were caused to suffer, and will continue to suffer in the future *inter alia*: extreme fear, fright, embarrassment, nervousness, grief, insomnia, anxiety, shock, humiliation, apprehension, defamation of character, emotional and physical pain and suffering, mental injuries and anguish, loss of enjoyment of life, and medical expenses for treatment of such injuries they have suffered and are suffering, as a result of the unlawful and tortious actions and omissions of Defendant Loyola University New Orleans. The amount of damages for which Plaintiff are entitled to recover for their emotional distress resulting from the actions and omissions of Defendant Loyola University New Orleans, acting directly and/or through its officers, administrators, employees, agents, and/or those over whom it exercised control, are to be proved at trial.

## COUNT VI
## VICARIOUS LIABILITY

141.    Plaintiff reallege and incorporate each and every allegation contained in each and every preceding Paragraphs 1 through 140 as if fully set forth herein, and further allege:

142.    At all times relevant herein, Defendant Loyola University New Orleans is vicariously liable, under the laws of the State of Florida and/or the doctrine of *Respondeat Superior*, for the acts and omissions of its officers, administrators, employees, servants, agents, and/or those over whom it exercised control supervision and direction.

143.    At all times relevant herein, Defendant Loyola University New Orleans is vicariously liable, under the laws of the State of Florida and/or under the doctrine of

*Respondeat Superior*, for the acts and omissions of student journalist Ms. Witt over whom it exercised control supervision and direction.

## COUNT VII
## COMPENSATORY DAMAGES

144.    Plaintiff reallege and incorporate each and every allegation contained in each and every preceding Paragraphs 1 through 143 as if fully set forth herein, and further allege:

145.    As a direct and proximate result of the unlawful actions and/or omissions of Defendant Loyola University New Orleans, acting directly and/or through its officers, administrators, employees, agents, and/or those over whom it exercised control, as previously described above, Plaintiff were injured, and were caused to suffer, and will continue to suffer in the future; and as a result of the sustained injuries and suffering to Plaintiffs, they are entitled to recover any and all damages, including general and special damages, as provided by law, in an amount to be determined at trial, and which will fully compensate them for *inter alia*: past, present and future emotional and physical pain and suffering; past, present and future mental anguish; past and future medical expenses; disabilities; loss and impairment of life's pleasures; loss of past, present and future enjoyment of life; and further including any and all compensatory damages (both general and special damages) as provided by law, together with legal interest thereon as also provided by law, from the date of judicial demand until paid; and for all costs of these proceedings and for all general and equitable relief as this Honorable Court may deem just and proper. The spectacle of Plaintiff Luke Sahs' arrest in his university's cafeteria by four (4) New Orleans Police Officers and shared on the school newspaper, The Maroon, not

only stripped him of dignity but marked the beginning of an extensive period of social and psychological torment, including the development of emotional scars. The pervasive nature of the defamation, along with the other causes of actions described in this Complaint, have cast long shadows over Plaintiff Luke Sahs' future as a person and a young college student, affecting his self-esteem, interpersonal relationships, and trust in systemic institutions. The fear of re-engagement with law enforcement, educational entities, and the broader community reveals and manifests the profound, lasting effects of defamation on an individual's life. Plaintiff also incurred legal fees and expenses for the defense of the criminal case against Plaintiff Luke Sahs, for which they seek reimbursement. The criminal case against Plaintiff Luke Sahs was dismissed with prejudice for lack of evidence by the District Attorney in New Orleans on or about January 22, 2024.

### COUNT VIII
### PUNITIVE DAMAGES

146.    Plaintiff realleges and incorporates each and every allegation contained in each and every preceding Paragraphs 1 through 145 as if fully set forth herein, and further allege:

147.    The conduct of Defendant Loyola University New Orleans, acting directly and/or through its officers, administrators, employees, agents, and/or those over whom it exercised control, as previously described above, was so reckless or wanting in care that it constitutes and constituted a conscious disregard or indifference to the life or rights of Plaintiff Luke Sahs who was exposed to such conduct.

148.    Defendant Loyola University New Orleans, acting directly and/or through its officers, administrators, employees, agents, and/or those over whom it exercised control

as described above, engaged in willful, wanton, malicious, and/or reckless conduct and/or gross negligence that caused the foregoing above-identified damages upon Plaintiff Luke Sahs, disregarding his protected rights.

149.    The willful, wanton, malicious, and/or reckless conduct and/or gross negligence of Defendant Loyola University New Orleans, acting directly and/or through its officers, administrators, employees, agents, and/or those over whom it exercised control, as previously described above, includes, but is not limited to, Defendant Loyola University New Orleans's tortious defamatory published statements orchestrated to defame Plaintiff Luke Sahs' personal and professional character resulting in substantial and irreparable damages sustained by Plaintiff Luke Sahs.

150.    Defendant Loyola University New Orleans, acting directly and/or through its officers, administrators, employees, agents, and/or those over whom it exercised control, has caused great harm to Plaintiffs, especially to Plaintiff Luke Sahs, and demonstrated an outrageous conscious disregard for his rights with implied malice and/or gross negligence, warranting the imposition of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray that, after all due proceedings are conducted, and all parties afforded due process of law, that there be a judgment rendered in their favor and against Defendant Loyola University New Orleans casting it liable, and Plaintiff respectfully request the following relief from this Honorable Court:

 a. compensatory damages as provided by law and according to proof for Plaintiff Luke G. Sahs comprising, but not limited to: (1) damages including costs and expenses

related to the past, present, and future for his respective personal and professional humiliation, insomnia, depression, stress, anxiety, mental anguish and suffering experienced in the past or to be experienced in the future and (2) costs and expenses related to his criminal trial in New Orleans which was dismissed by the New Orleans District Attorney with prejudice due to inter alia lack of evidence;

 b. an award of punitive damages in an amount sufficient to deter Defendant Loyola University New Orleans from similar wrongful conduct in the future;

 c. all costs of these proceedings and for all general and equitable relief including an order for an award of attorney's fees and costs, as provided by law;

 d. an award of pre-judgment and post-judgment interest as provided by law; and

 e. an order for all such other relief as this Honorable Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

 Pursuant to Fed. R. Civ. P. 38(b) Plaintiff demand a trial by jury on all issues allowable by law.

Dated: **February 27, 2024.** Respectfully submitted,

By: /s/ Victoria E. Brieant
Victoria E. Brieant (FL Bar No. 632961)
4000 Ponce de Leon Blvd., Suite 470
Coral Gables, FL 33146
Telephone: (305) 413-9026
Facsimile:  (786) 228-4914
Email: victoria@brieantlaw.com

John W. Carpenter
(La. Bar No. 03940)  *(pro hoc vice pending)*
Law Offices of John W. Carpenter, LLC
201 St Charles Ave., Suite 2500

New Orleans, La. 70170
Telephone Office: (504) 599-5955
Telephone Cell: (415) 577-0698
Email: john@jwcarpenterlaw.com

Elizabeth Bagert Carpenter, Esq.
(La. Bar No. 31653) (*pro hoc vice pending*)
Law Office of Elizabeth Bagert Carpenter
201 St Charles Ave., Suite 2500
New Orleans, La. 70170
Telephone Office: (504) 599-5955
Telephone Cell: (504) 373-4624
Email: ebc@neworleans-criminal-defense.com

*Attorneys for Plaintiff*
Luke G. Sahs