UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 24-CV-20747-PCH

**LUKE G. SAHS,**

   *Plaintiff*,

v.

**LOYOLA UNIVERSITY NEW ORLEANS,**

   *Defendant*.

_____/

**ORDER**

**THIS CAUSE** is before the Court upon Defendant Loyola University New Orleans' Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2) and for Failure to State a Claim Pursuant to Rule 12(b)(6) ("Motion") [ECF No. 12]. Plaintiff, Luke G. Sahs, ("Plaintiff" or "Sahs"), filed a Response in Opposition to Loyola University New Orleans' Motion ("Response") [ECF No. 15], to which Loyola University New Orleans ("Defendant" or "Loyola") filed a Reply [ECF No. 16]. This is a defamation case involving a Florida student arrested in Louisiana while attending a Louisiana university and additional alleged torts occuring entirely in Louisiana. The Court has carefully considered the briefing, the record, and the applicable law. For the reasons set forth below, the Court transfers this case to the Eastern District of Louisiana.

**I.     Background**

In February of 2023, Sahs, a student of Loyola, attended a Loyola-sponsored trip to Honduras with several other students and a professor. *See* Complaint [ECF No. 1] ¶¶ 29–30. On this trip, he befriended fellow student Morgan S. Matteson ("Matteson"). *Id.* ¶ 31. After the trip ended, sometime in early March 2023, Matteson filed a misdemeanor stalking complaint with the

New Orleans Police Department ("NOPD"). *Id.* ¶ 39. Matteson not only reported that Sahs was stalking her, but also that he had "bomb-making equipment" in his dormitory room and that she feared for her life. *Id.* On the evening of March 2, 2023, while Sahs was dining at a Loyola student dining hall, four NOPD officers arrived and arrested him. *Id.* ¶ 44. A student reporter for The Maroon, the Loyola University student newspaper, photographed the four NOPD officers escorting Sahs out of the dining hall. *Id.* Later that same evening, The Maroon sent a different student reporter, Kloe Witt ("Witt"), to the Loyola University Police Department ("LUPD") station. *Id.* ¶ 46. Witt spoke to a LUPD officer about Sahs' arrest and received a copy of the "arrest documents." *Id.* ¶ 48. Marquita Morgan-Jones, a Loyola university administrator, also arrived at the LUPD station to inquire about the arrest and took the copy of the arrest documents from Witt. *Id.* ¶ 49.

The Maroon posted an article (the "First Article") with a picture of Sahs' arrest and describing several statements that the LUPD made to her, attributing those statements to the LUPD. *Id.* ¶ 51; *see also* Exhibit A [ECF No. 1-1]. Sahs, who was suspended from Loyola and returned to his home in Miami, later obtained Louisiana counsel. *Id.* ¶ 61, 71. On March 10, 2023, Sahs' Louisiana counsel wrote a letter to Loyola demanding that Loyola take down the First Article. *Id.* ¶ 76–77. On March 17, 2023, The Maroon re-wrote the article and published it again (the "Second Article"), clarifying that the LUPD relied on an arrest affidavit filed by another Loyola student to make the arrest. *Id.* ¶ 78.

On February 27, 2024, Sahs filed this suit against Loyola in the Southern District of Florida, alleging the following: Count I) defamation, Count II) defamation per se, Count III) defamation by implication, Count IV) negligence, and Count V) negligent infliction of emotional distress ("NIED"). Soon thereafter, Loyola filed its Motion.

## II.     Legal Standard

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (alteration added) (citing *Twombly*, 550 U.S. at 556). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (alteration added) (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555.

On a motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff and accepts its factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). Unsupported allegations and conclusions of law, however, will not benefit from this favorable reading. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The scope of review on a motion to dismiss under Rule 12(b)(6) is limited to the four corners of the complaint and the exhibits attached. *See Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006) (citation omitted).

### III. Discussion

As the facts of this case make abundantly clear, jurisdiction is improper in Florida. Florida federal courts conduct a two-step inquiry when analyzing personal jurisdiction over a foreign defendant, looking first to Florida's long-arm statute. *Carmouche v. Tamborlee Mgmt., Inc.*, 789

F.3d 1201, 1203 (11th Cir. 2015).  Assuming personal jurisdiction is proper under Florida's long-arm statute, courts next analyze whether jurisdiction over the foreign defendant would satisfy due process.  *Id.*  Jurisdiction is improper under both prongs of the jurisdictional analysis here.

Sahs alleges that jurisdiction is proper under Florida's long-arm statute, which provides for jurisdiction over nonresident defendants who commit tortious acts within Florida.  *See* Fla. Stat. Sec. 48.193(1)(a)(2).  None of the alleged tortious activity that Sahs attributes to Loyola occurred in Florida.  Instead, these actions occurred in Louisiana, not Florida, and therefore cannot serve as a basis for specific personal jurisdiction in Florida.  Accordingly, jurisdiction is improper under the first prong of the analysis.

Sahs relies on *Internet Solutions Corp. v. Marshall*, 611 F.3d 1368, 1370 (Fla. 2010) for the proposition that jurisdiction is proper under Florida's long-arm statute because The Maroon published the article on a website accessible in Florida, but Sahs' argument still fails at the second prong of the jurisdictional analysis.  Hauling Loyola into court in the Southern District of Florida would not comport with due process when the only connections this case has to Florida are the facts that Sahs is from Florida and that The Maroon's website is accessible from Florida, as it would be in any other state.  Sahs points out that Loyola regularly recruits students from Florida, that Loyola's officials occasionally visit Florida, and that Loyola has alumni associations in Florida, but "[f]ederal courts have repeatedly held, however, that in cases involving personal jurisdiction 'over an out-of-state educational institution ... that the institution is not subject to general personal jurisdiction where its only contacts with the forum state are its involvement in activities that are typical of a nationally prominent university.'" *Tobinick v. Novella*, No. 9:14-CV-80781, 2014 WL 7407500, at *3 (S.D. Fla. Sept. 25, 2014) (quoting *Am. Univ. Sys., Inc. v. Am. Univ.*, 858 F.Supp.2d 705, 713–17 (N.D. Tex. 2012) (collecting cases holding the same)).  Thus,

the lone connection this case has with Florida beyond those that any nationally prominent university would have – Sahs' residency in Florida – cannot establish the necessary minimum contacts between Loyola and Florida to satisfy due process, rendering jurisdiction improper under the second prong of the analysis as well.

In his Response, Sahs requests that the Court transfer his case to the Eastern District of Louisiana if the Court finds jurisdiction lacking. Response at 20. The Court accepts Sahs' invitation to transfer this case due to lack of jurisdiction.[1] Accordingly, it is

**ORDERED AND ADJUDGED** that this case is **TRANSFERRED** to the Eastern District of Louisiana.

The Clerk of the United States District Court for the Southern District of Florida is hereby **DIRECTED** to take all necessary steps and procedures to effect the expeditious transfer of the above-styled action to the United States District Court for the Eastern District of Louisiana. This action shall be **CLOSED** for administrative purposes and to the extent not otherwise disposed of herein, all pending motions are hereby **DENIED without prejudice, as moot, with leave for refiling in the transferee court.**

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 28, 2024.

_____
PAUL C. HUCK
UNITED STATES DISTRICT JUDGE

---

[1] Even if jurisdiction were proper, the Southern District of Florida would be the improper venue for this case. The principles of *forum non conveniens* weigh heavily in favor of transferring this case to the Eastern District of Louisiana, trumping the deference generally given to a plaintiff's choice of forum. *See Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331, 1338 (11th Cir. 2020) (discussing the *forum non conveniens* factors). The Eastern District of Louisiana is an adequate and available alternative forum and both the private and public factors weigh in favor of transfer; the vast majority of witnesses and documentary evidence are in the Eastern District of Louisiana and Louisiana has a greater interest than Florida in deciding this dispute, given the questions of Louisiana state law at issue and the involvement of many Louisiana residents in the case.

cc: All counsel of record